**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHERISE RICHARDSON, individually and on behalf of all others similarly situated, | Civil Action No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| EDGEWELL PERSONAL CARE, LLC, | |
| Defendant. | |

Plaintiff Sherise Richardson ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Edgewell Personal Care, LLC ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit on behalf of purchasers of Hawaiian Tropic Reef Friendly Sunscreen[1] (the "Sunscreen Products").  Defendant markets and sells the Sunscreen Products as "Reef Friendly."

2.      Coral reefs are among the most diverse ecosystems in the world.  In fact, thousands of species of corals have been discovered; some live in warm, shallow, tropical seas and others in the cold, dark depths of the ocean.  Because of the diversity of life found in the habitats created by corals, reefs are often called the "rainforests of the sea."  About 25% of the

---

[1] The Sunscreen Products include all products designed, marketed, manufactured, distributed, or sold by Defendant as "Reef Friendly."

ocean's fish depend on healthy coral reefs.  Fish and other organisms shelter, find food, reproduce, and rear their young in the many nooks and crannies formed by corals.[2]

3.      However, coral reef ecosystems are threatened by pollution.  Relevant to this matter, certain chemicals found in sunscreen lead to the "bleaching" of coral reefs, resulting in death and damage, as seen below:[3]



**Left: Bleached Coral**                    **Right: Healthy Coral**

---

[2] https://savethereef.org/about.html (last accessed Oct. 5, 2021).

[3] *Id.*

4.      The following infographic demonstrate the harm that the chemicals found in sunscreen can have on coral reefs and other marine life:



5.      In response to reef damage and death, consumers have turned to sunscreen products that are labeled and marketed as "Reef Friendly," which purportedly will not cause damage to coral reef ecosystems.

6.      However, contrary to Defendant's representation that its products are "Reef Friendly," the Sunscreen Products at issue are not actually "Reef Friendly."  In fact, the Sunscreen Products contain harmful chemicals known to harm and/or kill coral reefs, such as avobenzone, homosalate, and octocrylene.

7.      As such, Defendant has engaged in widespread false and deceptive conduct by designing, marketing, manufacturing, distributing, and selling its Sunscreen Products as "Reef Friendly" (the "Reef Friendly Claims").  Every package of the Sunscreen Products falsely and misleadingly represents that the products are "Reef Friendly."

8.      Plaintiff and Class Members purchased the Sunscreen Products, which are designed, marketed, manufactured, distributed, and sold by Defendant.  Further, Plaintiff and Class Members relied to their detriment on Defendant's representation that the Sunscreen Products were purportedly "Reef Friendly," when they are not.  Plaintiff and Class Members would not have paid to purchase Defendant's Sunscreen Products – or would not have paid as much as they did to purchase them – had they known that they were not in fact "Reef Friendly." Plaintiff and Class Members thus suffered monetary damages as a result of Defendant's deceptive and false representations.

## PARTIES

9.      Plaintiff Sherise Richardson is a citizen of New York, residing in Middletown, New York.  In July 2021, Plaintiff Richardson purchased Hawaiian Tropic Silk Hydration Weightless SPF 30 Sunscreen for her personal use for approximately $8.92 from a Walmart in Middletown, New York.  Prior to her purchase of her Sunscreen Product, Plaintiff Richardson reviewed the product's labeling and packaging and saw that her Sunscreen Product was labeled and marketed as "Reef Friendly."  Plaintiff Richardson relied on that labeling and packaging to choose her Sunscreen Products over comparable products.  Plaintiff Richardson saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Sunscreen Product was "Reef Friendly."  Plaintiff Richardson relied on these representations and warranties in deciding to purchase her Sunscreen Product.  Accordingly, those representations and warranties were part of the basis of the bargain, in that she would not have purchased her Sunscreen Product on the same terms had she known those representations were not true.  However, Plaintiff Richardson remains interested in purchasing "Reef Friendly" sunscreen and would consider the Sunscreen Products in the future if Defendant ensured the products were actually "Reef Friendly."  In making her purchase, Plaintiff Richardson paid a

substantial price premium due to the false and misleading Reef Friendly Claims.  However,

Plaintiff Richardson did not receive the benefit of her bargain because her Sunscreen Product

was not, in fact, "Reef Friendly."  Plaintiff Richardson further understood that the purchase came

with Defendant's representation and warranties that her Sunscreen Product was "Reef Friendly."

10.     Defendant Edgewell Personal Care, LLC ("Edgewell") is a limited liability

company organized and existing under the laws of the state of Delaware, with its principal place

of business in Shelton, Connecticut.  Edgewell manufactures, sells, and/or distributes Hawaiian

Tropic-brand products, and is responsible for the advertising, marketing, trade dress, and

packaging of the Sunscreen Products.  Edgewell manufactured, marketed, and sold the Sunscreen

Products during the class period.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a)

because this case is a class action where the aggregate claims of all members of the proposed

class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members

of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of

states different from Defendant.

12.     This Court has personal jurisdiction over Defendant because it conducts

substantial business within New York, including the sale, marketing, and advertising of the

Sunscreen Products.  Furthermore, a substantial portion of the events giving rise to Plaintiff's

claims occurred in this State, including Plaintiff's purchase.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant

does substantial business in this District and a substantial part of the events giving rise to

Plaintiff's claims took place within this District.

**FACTUAL ALLEGATIONS**

A.      **Defendant's Products**

14.      Defendant designs, markets, manufactures, distributes, and sells its Sunscreen

Products, which are sold as "Reef Friendly" sunscreen.  On the front of all the Sunscreen

Product's packaging, Defendant advertises and representants that its Sunscreen Products are

"Reef Friendly."  The Sunscreen Products are all substantially similar, in that they all share the

Reef Friendly Claim and contain reef toxic chemicals:



15.     However, all of the Sunscreen Products contain the following chemical agents that are not "Reef Friendly:"

| Product | Ingredient(s) |
|---------|---------------|
| Silk Hydration Weightless Lotion | • Avobenzone 2.0%<br>• Homosalate 5.5%<br>• Octocrylene 4.0% |
| Silk Hydration Weightless Lotion for Face | • Avobenzone 2.0%<br>• Homosalate 5.5%<br>• Octocrylene 4.0% |
| Antioxidant+ Lotion | • Avobenzone 2.2%<br>• Homosalate 7.0%<br>• Octocrylene 4.2% |
| Matte Effect Lotion | • Homosalate 8.0%<br>• Octocrylene 5.7% |

B.      **Octocrylene**

16.     Octocrylene is a chemical UV-filter used to reduce UV damage through absorption.

17.     The Haereticus Environmental Laboratory ("HEL") is a non-profit scientific organization dedicated to increasing the scientific, social, and economic knowledge of natural environmental habitats in order to better conserve and restore threatened environmental habitats and resources.[4]  The HEL also dedicates research to sunscreen and its impact on natural environmental habitats, such as coral reefs.

18.     The HEL has reported that octocrylene naturally degrades into the chemical benzophenone, which then acts as a possible reproductive toxicant and a metabolic and

---

[4] https://haereticus-lab.org/ (last accessed Oct. 6, 2021).

endocrine disrupter in coral reefs.[5]  As such, the HEL has included it on the HEL list of harmful chemicals.[6]

19.     Similarly, the National Ocean Service ("NOS") advocates against the use of chemical UV-filters, including octocrylene, because of the negative impact it has on coral reefs, such as tissue accumulation, bleaching, DNA damage, deformation of infant coral, and coral death.[7]

20.     In 2019, a study entitled *Metabolomics Reveal That Octocrylene Accumulates in Pocillopora damicornis Tissues as Fatty Acid Conjugates and Triggers Coral Cell Mitochondrial Dysfunction*, Analytical Chemistry 2019 91 (1), 990-995 by Dien et al., found that octocrylene can induce coral cell mitochondrial dysfunction by transforming into fatty acid conjugates via oxidation of the ethylhexyl chain, yielding very lipophilic octocrylene analogues that accumulate in coral tissues.

21.     In 2019, another study entitled *Review of Environmental Effects of Oxybenzone And Other Sunscreen Active Ingredients*, J Am Acad Dermatol. 2019;80(1):266-271, octocrylene was the most frequently identified UV chemical agent found in cod liver.

22.     In 2014, in *Accumulation And Effects Of The UV-Filter Octocrylene In Adult And Embryonic Zebrafish (Danio Rerio)*, Science of The Total Environment, 2014 (476–477), 207-217, found that bioaccumulation of octocrylene in zebrafish affected transcription of geneses related to developmental processes in the brain and liver as well as metabolic processes in the liver.

---

[5] https://haereticus-lab.org/chemical-in-sunscreen-products-transforms-into-carcinogen/ (last accessed Oct. 6, 2021).

[6] https://haereticus-lab.org/protect-land-sea-certification-3/ (last accessed Oct. 6, 2021).

[7] https://oceanservice.noaa.gov/news/sunscreen-corals.html (last accessed Oct. 6, 2021).

23.     Because of the myriad of harm caused to marine life by octocrylene, discussed above, researchers have called on the federal Food & Drug Administration to pull octocrylene-containing sunscreens from retail.[8]

C.      **Homosalate**

24.     The Kohala Center ("KC") is an independent, community-based center for research, conservation, and education in Hawai'i focusing on energy, self-reliance, and ecosystem health.[9]

25.     The KC cautions consumers to never use products containing homosalate.[10]

D.      **Avobenzone And Homosalate**

26.     Avobenzone and Homosalate are also chemical UV-filters that can cause harm to coral reefs, such as coral bleaching and adverse effects on reef reproduction.[11]

27.     Avobenzone  is a known endocrine disruptor and can reduce coral resilience against high ocean temperatures, resulting in increased coral death worldwide.[12]

28.     Further, avobenzone may cause mitochondrial dysfunction, killing cells and inducing coral bleaching.[13]

29.     Homosalate is included on the HEL list of harmful chemicals.[14]

---

[8] https://chemicalwatch.com/315052/scientists-ask-us-fda-to-recall-octocrylene-containing-products (last accessed Oct. 6, 2021).

[9] https://kohalacenter.org/about (last accessed Oct. 6, 2021).

[10] https://kohalacenter.org/kbec/reef-friendly-sunscreen (last accessed Oct. 6, 2021).

[11] https://www.nps.gov/articles/protect-yourself-and-protect-the-reef.htm (last accessed Oct. 6, 2021).

[12] https://biologicaldiversity.org/w/news/press-releases/hawaii-senate-bill-bans-harmful-sunscreen-chemicals-2021-03-09/ (last accessed Oct. 6, 2021).

[13] *Id.*

[14] https://haereticus-lab.org/protect-land-sea-certification-3/ (last accessed Oct. 6, 2021).

30.     Further, the European Commission has published preliminary opinions on the safety of octocrylene, finding that homosalate is not safe in the amounts presently used.[15]

31.     Similarly, much like homosalate above, the KC warns consumers to avoid sunscreen products containing avobenzone.[16]

32.     In *Direct and Indirect Effects of Sunscreen Exposure for Reef Biota. Hydrobiologia*, 2016;776(1):139-146 by McCoshum et al., researchers exposed coral to sunscreen containing homosalate, oxybenzone, octocrylene, and avobenzone for 72 hours. The results showed significant growth reduction in exposed coral colonies, as compared to unexposed groups.

E.     **Domestic And International Bans Of Chemical UV-Filters**

33.     In 2018, Hawaiian lawmakers banned oxybenzone and octinoxate from inclusion in sunscreens sold in Hawaii due to their dangerous impact on coral reefs and marine life. In 2021, Hawaii amended the bill to include sunscreens that contain avobenzone and octocrylene, effective 2023.[17] Octocrylene and Avobenzone were specifically banned for their toxic impact on marine life, particularly coral, and their endocrine disruptive attributes.[18]

34.     In June 2019, the US Virgin Islands also banned oxybenzone, octocrylene, and octinoxate in sunscreen due to their coral reef-damaging properties.[19]

---

[15] https://www.ewg.org/sunscreen/report/the-trouble-with-sunscreen-chemicals/ (last accessed Oct, Oct. 6, 2021).

[16] https://kohalacenter.org/kbec/reef-friendly-sunscreen (last accessed Oct. 6, 2021).

[17] Hawaii Senate Bill 132, Hawaii State Legislature, https://www.capitol.hawaii.gov/session2021/bills/SB132_SD2_.HTM (last accessed Oct. 6, 2021).

[18] https://www.westhawaiitoday.com/2021/03/10/hawaii-news/bill-would-prohibit-sale-of-sunscreen-products-containing-avobenzone-and-octocrylene/ (last accessed Oct. 6, 2021).

[19] https://www.downtoearth.org.in/news/wildlife-biodiversity/us-virgin-islands-bans-sunscreens-harming-coral-reefs-70158&sa=D&source=editors&ust=1633543210695000&usg=AOvVaw0OAzNPH9QeMAtJ8d NXuOfz (last accessed Oct. 6, 2021).

35.     In 2018, Palau banned sunscreens containing octocrylene due to its reef toxicity.[20]

36.     Similar legislation has been approved in Bonaire, and the nature reserve areas in Mexico.  A similar ban is being actively discussed in Brazil and the European Union (EU).[21]

F.      **Defendant's Misrepresentations Regarding The Sunscreen Products**

37.     Defendant's advertising and marketing of the Sunscreen Products is false and misleading and omits material information.  Defendant prominently advertises and represents on the front label that the Sunscreen Products are "Reef Friendly."  Consumers reasonably expect that the Sunscreen Products will, in fact, be "Reef Friendly."  Nowhere on the Sunscreen Products' packaging does Defendant inform consumers that the Sunscreen Products are not actually "Reef Friendly."  Defendant's misrepresentations and/or omissions violate consumers' reasonable expectations and, as alleged herein, New York's consumer protection statutes.

38.     Defendant knew or should have known that the Sunscreen Products' Reef Friendly Claims were false, deceptive, and misleading, and that Plaintiff and Class Members would not be able to tell that the Sunscreen Products were not actually "Reef Friendly."

39.     Defendant employs professional chemists to create the Sunscreen Products. Therefore, Defendant, through its employees, knew or should have known that the Sunscreen Products are not "Reef Friendly" and that it was deceiving consumers by labeling the Sunscreen Products with the Reef Friendly Claims.

40.     Had Defendant not made the false, misleading, and deceptive representations and/or omissions alleged herein, Plaintiff and Class Members would not have purchased the Sunscreen Products or would not have paid as much as they did for such products.  Thus,

---

[20] https://chemicalwatch.com/71507/palau-to-ban-ten-sun-cream-ingredients-by-2020 (last accessed Oct. 6, 2021).

[21] https://pubs.rsc.org/en/content/articlehtml/2019/pp/c9pp00366e (last accessed Oct. 6, 2021).

Plaintiff and Class Member suffered an injury in fact and lost money or property as result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

41.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

42.     Plaintiff seeks to represent a class defined as all people who purchased any Sunscreen product that represents the product is purportedly "Reef Friendly" during the applicable statute of limitations (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

43.     Plaintiff Sherise Richardson also seeks to represent a subclass consisting of Class Members who reside in New York (the "New York Subclass").

44.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

45.     **Numerosity.**  The Class and Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of Members in the Class and in the Subclass.  Although the precise number of Class and Subclass Members is unknown to Plaintiff, it is known by Defendant and may be determined through discovery.

46.    **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all Members of the Class and Subclass and predominate over any questions affecting only individual Class or Subclass members.  These common legal and factual questions include, but are not limited to, the following:

(a)    Whether Defendant made false and/or misleading statements to the consuming public concerning the "Reef Friendly" claims on the Sunscreen Products;

(b)    Whether Defendant omitted material information to the consuming public concerning the "Reef Friendly" claims on the Sunscreen Products;

(c)    Whether Defendant's labeling and packaging for the Sunscreen Products is misleading and/or deceptive;

(d)    Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Sunscreen Products;

(e)    Whether Defendant's representations concerning the Sunscreen Products were likely to deceive a reasonable consumer;

(f)    Whether Defendant's omissions concerning the Sunscreen Products were likely to deceive a reasonable consumer;

(g)    Whether Defendant represented to consumers that the Sunscreen Products have characteristics, benefits, or qualities it does not have;

(h)    Whether Defendant advertised the Sunscreen Products with the intent to sell it not as advertised;

(i)    Whether Defendant falsely advertised the Sunscreen Products;

(j)    Whether Defendant made and breached express and/or implied warranties to Plaintiff and Class and Subclass Members about the Sunscreen Products;

(k)     Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and Class and Subclass Members; and

(l)     Whether Plaintiff and Class and Subclass Members are entitled to damages.

47.     **Typicality.**  Plaintiff's claims are typical of the claims of the other Members of the Class and Subclass in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading claims about the purported "Reef Friendly" nature of the Sunscreen Products.  All Class and Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

48.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Members of the Class and Subclass.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

49.     **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them.  Even if Class or Subclass Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by

this action.  The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

50.     In the alternative, the Class and Subclass may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class and to the Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of the Subclass as a whole.

## COUNT I
### Violation Of New York's Gen. Bus. Law § 349
### (On Behalf Of The New York Subclass)

51.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

52.     Plaintiff Sherise Richardson brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

53.     Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the purported "Reef Friendly"

nature of the Sunscreen Products to mislead consumers into believing the Sunscreen Products were "Reef Friendly," when they are not.

54.     Plaintiff Richardson has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff Richardson purchased a Sunscreen Product for her own personal use.  In doing so, Plaintiff Richardson relied upon Defendant's false, misleading, and deceptive representations that the Sunscreen Product was "Reef Friendly," when it was not.  Plaintiff Richardson spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

55.     Defendant's deceptive acts and practices were directed at consumers.

56.     Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendant knew consumers would purchase the Sunscreen Products and/or pay more for them under the false – but reasonable – belief that the Sunscreen Products were "Reef Friendly," when they are not.  By advertising so prominently that the Sunscreen Products were "Reef Friendly," Defendant proves that information about "Reef Friendliness" is material to consumers.  If such information were not material, Defendant would not feature it prominently on the front label of every Sunscreen Products package.  As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of Sunscreen Products to unsuspecting consumers across New York.  If Defendant had advertised its Sunscreen Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased it or would not have paid as much as they did for them.

57.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff Richardson and other Members of the New York

Subclass were injured in that they: (1) paid money for the Sunscreen Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Sunscreen Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Sunscreen Products they purchased had less value than if Defendant's representations about the purported "Reef Friendly" nature of the Sunscreen Products were truthful.

58.     On behalf of herself and Members of the New York Subclass, Plaintiff Richardson seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT II**
**Violation Of New York's Gen. Bus. Law § 350**
**(On Behalf Of The New York Subclass)**

59.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

60.     Plaintiff Sherise Richardson brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

61.     Defendant engaged in a campaign of false advertising with regard to the purported "Reef Friendly" nature of the Sunscreen Products to mislead consumers into believing the Sunscreen Products they purchase are "Reef Friendly," when they are not.

62.     Plaintiff Richardson has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff Richardson purchased her Sunscreen Product for her own personal use.  In doing so, Plaintiff Richardson relied upon Defendant's false, misleading, and deceptive representations that her Sunscreen Product was "Reef Friendly," when it was not.

Plaintiff Richardson spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

63.     Defendant's deceptive acts and practices were directed at consumers.

64.     Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations.  If Defendant had advertised its Sunscreen Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased the Sunscreen Products or would not have paid as much as they did for them.

65.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Plaintiff Richardson and other Members of the New York Subclass were injured in that they: (1) paid money for Sunscreen Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Sunscreen Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Sunscreen Products they purchased had less value than if Defendant's representations about the Sunscreen Products' purported "Reef Friendly" nature were truthful.

66.     On behalf of herself and Members of the New York Subclass, Plaintiff Richardson seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## <u>COUNT III</u>
**Breach Of Express Warranty**
**(On Behalf Of The Class And The New York Subclass)**

67.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

68.     Plaintiff Sherise Richardson brings this claim individually and on behalf of the Members of the proposed Class and Subclass against Defendant.

69.     As the designer, manufacturer, marketer, distributor, and/or seller of the Sunscreen Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Sunscreen Products were "Reef Friendly."  Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class and Subclass.

70.     In fact, the Sunscreen Products do not conform to Defendant's representations because the Sunscreen Products are not, in fact, "Reef Friendly."  By falsely representing the Sunscreen Products in this way, Defendant breached express warranties.

71.     On October 4, 2021, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a warranty notice letter that complied in all respects with U.C.C. 2-607.  The letter provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.

72.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and Subclass were injured because they: (1) paid money for the Sunscreen Products that was not what Defendant represented; (2) were deprived of the benefit of the bargain because the Sunscreen Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Sunscreen Products they purchased had less value than if Defendant's representations about the Sunscreen Products' purported "Reef Friendly" nature were truthful.  Had Defendant not breached the express warranty by making the

false representations alleged herein, Plaintiff and Class and Subclass Members would not have purchased the Sunscreen Products or would not have paid as much as they did for them.

**COUNT IV**
**Breach of Implied Warranty**
**(On Behalf Of The Class And The New York Subclass)**

73.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

74.     Plaintiff Sherise Richardson brings this claim individually and on behalf of the Members of the proposed Class and Subclass against Defendant.

75.     Defendant routinely engages in the manufacture, distribution, and/or sale of the Sunscreen Products and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

76.     Plaintiff and Members of the Class and Subclass were consumers who purchased Defendant's Sunscreen Products for the ordinary purpose of such products.

77.     By representing that the Sunscreen Products were "Reef Friendly," Defendant impliedly warranted to consumers that the Sunscreen Products was merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

78.     However, the Sunscreen Products were not of the same average grade, quality, and value as similar goods sold under similar circumstances.  Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

79.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and Subclass were injured because they paid money for the Sunscreen Products that would not pass without objection in the trade or industry under the contract description.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a)  For an order certifying the Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class and New York Subclass, and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass;

b)  For an order finding in favor of Plaintiff, the Class, and New York Subclass on all counts asserted herein;

c)  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

d)  For prejudgment interest on all amounts awarded;

e)  For an order of restitution and all other forms of equitable monetary relief;

f)  For injunctive relief as pleaded or as the Court may deem proper; and

g)  For an order awarding the Plaintiff, the Class, and New York Subclass their reasonable attorneys' fees, expenses, and costs of suit.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: October 7, 2021                                         Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:___*/s/ Neal J. Deckant*___
            Neal J. Deckant

Neal J. Deckant
Brittany S. Scott*
1990 North California Blvd., Suite 940

Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ndeckant@bursor.com
          bscott@bursor.com

*\* Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*