## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SHERISE RICHARDSON, individually and on behalf of all others similarly situated, | Civil Action No.: 7:21-cv-08275-PMH |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| EDGEWELL PERSONAL CARE, LLC, | |
| Defendant. | |

### NATURE OF THE ACTION

1.  Plaintiff Sherise Richardson ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**"), brings this class action complaint against Defendant Edgewell Personal Care, LLC. ("**Defendant**"), and alleges the following upon information and belief, unless otherwise expressly stated as based upon personal knowledge:

2.  **Synopsis.** To obtain an unfair competitive advantage in the billion-dollar sunscreen market, Defendant is exposing consumers and the environment to harmful chemical active ingredients in their sunscreens and falsely labeling them as "Reef Friendly." Defendant has reaped millions of dollars through this fraudulent scheme based on a calculated business decision to put profits over people and the environment. Specifically, Defendant deceptively labels certain of its Hawaiian Tropic® brand sun care Products[1] as "Reef Friendly" (hereinafter, "**Reef Friendly Representation,**" "**False Advertising Claim**" and/or "**Challenged Representation**"), deliberately leading reasonable consumers, including Plaintiff, to believe that the Products only contain ingredients that are reef-friendly and otherwise cannot harm reefs, including the coral reefs and marine life that inhabit or depend on them. Fair and accurate

---

[1] "Products" are defined in Paragraph 4.

1

exemplars of the Products' front labels, with the Challenged Representation outlined in a red box, are below.

(1) Hawaiian Tropic® *AntiOxidant+* Sunscreen: Exemplar Front Label



(2) Hawaiian Tropic® *Island Sport* Sunscreen: Exemplar Front Labels




(3) Hawaiian Tropic® *Island Tanning* Sunscreen: Exemplar Front Label



(4) Hawaiian Tropic® *Lip Balm* Sunscreen: Exemplar Front Label



(5) Hawaiian Tropic® *Matte Finish* Sunscreen: Exemplar Front Label



(6) Hawaiian Tropic® *Sheer Touch* Sunscreen: Exemplar Front Label



(7) Hawaiian Tropic® *Silk Hydration* Sunscreen: Exemplar Front Labels









3.      **The Deception of the Challenged Representation.** The Challenged Representation has misled reasonable consumers, including Plaintiff, into believing that the Products only contain ingredients that are reef-friendly or otherwise cannot harm reefs, including the coral reefs and the marine life that inhabit or depend on them. However, contrary to this labeling, the Products actually contain avobenzone, homosalate, octisalate, and/or octocrylene (herein referred to as the "**Harmful Ingredient(s)**"), which are chemical ingredients that are not reef-friendly because they can harm and/or kill reefs, including the coral reefs and the marine life that inhabit or depend on them. Through falsely, misleadingly, and deceptively labeling the Products, Defendant sought to take advantage of consumers' desire for sunscreens that are friendly to or safe for reefs (coral reefs and marine life and related ecosystems that inhabit or depend on coral reefs), while reaping the financial benefits of using less desirable, harmful, and/or less costly chemicals in the Products. Defendant has done so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage.

4.      **The Products.** The products at issue are Hawaiian Tropic® brand sun care products (including sunscreens, sun-blocks, and tanning lotions) manufactured and/or marketed by Defendant that contain the Challenged Representation on the labels and/or packaging, in all sizes, forms of topical application (including, for example, stick, paste, oil, lotion, cream, liquid, spray, or mist), SPFs, scents and/or flavors, variations, and packs, sets or bundles, which include, but are not necessarily limited to:

    a.   Hawaiian Tropic® *AntiOxidant+* Sunscreen, including

        (1)   Lotion in SPF 30, 6-oz (*see*, *supra*, paragraph 2, a.; *see also* **Exhibit 1-1** [Product Images]);

    b.   Hawaiian Tropic® *Island Sport* Sunscreen, including

        (2)   Lotion in SPF 15, 8-oz,

        (3)   Lotion in SPF 30, 8-oz,

        (4)   Lotion in SPF 50, 8-oz,

        (5)   Spray in SPF 15, 6-oz,

(6) Spray in SPF 30, 6-oz, and

(7) Spray in SPF 50, 6-oz (*see*, *supra*, paragraph 2, b.; *see also* **Exhibit 1-2 to 1-7** [Product Images]);

c. Hawaiian Tropic® *Island Tanning* Oil Pump Spray, including

(8) Oil Pump Spray in SPF 6, 8-oz (*see*, *supra*, paragraph 2, c.; *see also* **Exhibit 1-8** [Product Images]);

d. Hawaiian Tropic *Lip Balm* Sunscreen Stick, including

(9) Sunscreen Stick in SPF 25, 0.14-oz (*see*, *supra*, paragraph 2, d.; *see also* **Exhibit 1-9** [Product Images]);

e. Hawaiian Tropic® *Matte Effect* Sunscreen, including

(10) Lotion in SPF 30, 6-oz, and

(11) Lotion in SPF 50+, 6-oz (*see*, *supra*, paragraph 2, e.; *see also* **Exhibit 1-10 to 1-11** [Product Images]);

f. Hawaiian Tropic® *Sheer Touch* Sunscreen, including

(12) Lotion in SPF 15, 8-oz,

(13) Lotion in SPF 30, 8-oz, and

(14) Lotion in SPF 50, 8-oz (*see*, *supra*, paragraph 2, f.; *see also* **Exhibit 1-12 to 1-14** [Product Images]); and

g. Hawaiian Tropic® *Silk Hydration* Sunscreen, including

(15) Face Lotion in SPF 30, 1.7-oz,

(16) Lotion in SPF 30, 6-oz,

(17) Lotion in SPF 50, 6-oz,

(18) Oil Mist in SPF 15, 5-oz,

(19) Oil Mist in SPF 30, 5-oz, and

(20) Spray in SPF 50, 6-oz (*see*, *supra*, paragraph 2, g.; *see also* **Exhibit 1-15 to 1-20** [Product Images]).

The aforementioned Products are collectively referred to herein and throughout this complaint as the "**Products**." *See* **Exhibit 1** [Product Images].

5.      **Crux of Case.** The crux of this case is that—irrespective of Defendant's lack of substantiation—the Products are not Reef-Friendly, which is contrary to the product labeling and marketing.

## JURISDICTION

6.      This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over Defendant because it conducts substantial business within New York, including the sale, marketing, and advertising of the Sunscreen Products.  Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's purchase.

## VENUE

8.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. In addition, Plaintiff purchased the unlawful Products in this District, and Defendant has marketed, advertised, and sold the Products within this District.

## PARTIES

A.    **Plaintiff**

9.      **Plaintiff Sherise Richardson.** The following is alleged based upon personal knowledge: (1) Plaintiff is a resident of Middletown, New York. (2) Plaintiff purchased the Hawaiian Tropic® Silk Hydration Weightless SPF 30(the "**Purchased Product**") for approximately $8.92 at a Walmart Store in Middletown, New York, in July 2021. (3) In making the purchase, the Challenged Representation on the Product's label led Plaintiff to believe that the Product's ingredients were all reef-friendly and otherwise could not harm reefs, including the coral reefs and marine life that inhabit and depend on them. (4) Plaintiff did not see and was not aware of any asterisk on the Challenged Representation. (5) Plaintiff was not aware that the back panel

of the Product contained any information relating to the Challenged Representation, particularly any information that could be inconsistent with the Challenged Representation on the front label of the Product. (6) At the time of purchase, Plaintiff did not know that the aforementioned Challenged Representation was false—i.e., that the Product contains ingredients that were not reef-friendly or otherwise could harm reefs, including the coral reefs and marine life that inhabit and depend on them. (7) Plaintiff would not have purchased the Product had she known that the Challenged Representation was false. (8) Plaintiff continues to see the Products available for purchase, desires to purchase them, and would, indeed, purchase them again if the Challenged Representation was in fact true. (9) Plaintiff is not personally familiar with ingredients in the Products and does not possess any specialized knowledge, skill, experience, or education in sun care products, similar to and including the Products, and their ingredients or formulations; the Harmful Ingredients and similar substances; marine life pollutants and substances hazardous to reefs, including coral reefs and the marine life that inhabits and depends on them; and, therefore, Plaintiff has no way of determining whether the Challenged Representation on the Products is true. (10) Plaintiff is, and continues to be, unable to rely on the truth of the Challenged Representation on the Products' labels.

B.  **Defendant**

10.     **Defendant Edgewell Personal Care, LLC ("Defendant" and/or "Edgewell")** is a limited liability company organized under the laws of the state of Delaware, and headquartered with its primary places of business in the State of Connecticut. Defendant was doing business in the State of New York at all relevant times. Directly and through its agents, Defendant has substantial contacts with and receives substantial benefits and income from and through the State of New York. Defendant is one of the owners, manufacturers, and/or distributors of the Products, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling of the Products. Defendant and its agents promoted, marketed, and sold the Products at issue in this jurisdiction and in this judicial district.  The unfair, unlawful, deceptive, and misleading Challenged Representation on the Products was prepared, authorized, ratified, and/or approved by Defendant and its agents, and was disseminated throughout New York and the

nation by Defendant and its agents to deceive and mislead consumers in the State of New York and the United States into purchasing the Products. Further, Defendant controls approximately 25% of a $2 billion sunscreen market.[2]

## FACTUAL ALLEGATIONS

A. **Background**

11.     **Reefs' Diverse Ecosystems.** Reefs are some of the most diverse ecosystems in the world.[3]  In fact, thousands of species of corals have been discovered; some live in warm, shallow, tropical seas and others in the cold, dark depths of the ocean. Because of the diversity of life found in the habitats created by corals, reefs are often called the "rainforests of the sea."  About 25% of the ocean's fish depend on healthy coral reefs.  Fish and other organisms shelter, find food, reproduce, and rear their young in the many nooks and crannies formed by corals.[4]

12.     **Reefs' Impact on Other Ecosystems and Cultural Importance.** Reefs protect coastlines from storms and erosion, provide jobs for local communities, and offer opportunities for recreation.[5] Over half a billion people depend on reefs for food, income, and protection.[6] Additionally, reef ecosystems are culturally important to people around the world.[7] Indeed, the world's largest reef, the Australian Great Barrier Reef, is considered to be one of the great seven natural wonders of the world due to its scale, beauty, and biodiversity.[8] Despite their ecological

---

[2] Edgewell Personal Care Morgan Stanley Consumer & Retail Virtual Conference Presentation at p. 17, https://ir.edgewell.com/~/media/Files/E/EdgeWell-IR/presentation/ms-conf-dec-02-vf.pdf (last accessed February 3, 2022).

[3] *Coral Reefs*, Office for Coastal Management, https://coast.noaa.gov/states/fast-facts/coral-reefs.html (last accessed Jan. 27, 2022).

[4] *What is a Coral Reef*, Save The Reef, https://savethereef.org/about.html (last accessed Jan. 27, 2022).

[5] *Coral Reef Ecosystems*, National Oceanic and Atmospheric Administration, https://www.noaa.gov/education/resource-collections/marine-life/coral-reef-ecosystems     (last accessed Jan. 27, 2022).

[6] *Id.*

[7] *Id.*

[8] *Id.*; *Great Barrier Reef*, WWF [World Wildlife Fund], https://www.wwf.org.au/what-we-do/oceans/great-barrier-reef#gs.b5pmtu (last accessed Jan. 27, 2022).

and cultural importance, reefs are disappearing at alarming rates.[9] In fact, some scientists predict that if current trends continue, nearly all reefs will disappear over the next twenty to fifty years.[10]

13.     **Impact of Pollution on Reefs.** Among other factors, coral reef ecosystems are threatened by pollution. Coral belong to the *Cnidaria* family, which are soft bodied animals that engage in symbiosis with algae (zooxanthellae). Zooxanthellae live on coral. Their photosynthesis gives coral energy, and the algae itself provides the coral's vibrant colors. As coral grows, it forms branching structures culminating in reefs. When coral reefs face oxidative stress from pollutants, they expel the algae from their surface, turning the coral white (also known as "bleaching"). This process often leads to the coral reef's demise.[11]

---

[9] *Id.*

[10] Trevor Nace, *Nearly All Coral Reefs Will Disappear Over the Next 20 Years, Scientists Say*, Forbes (Feb. 24, 2020), https://www.forbes.com/sites/trevornace/2020/02/24/70-90-percent-of-coral-reefs-will-disappear-over-the-next-20-years-scientists-say/?sh=70e461da7d87 (last accessed Jan. 27, 2022).

[11] Samantha L. Schneider and Henry W. Lim, *Review of environmental effects of oxybenzone and other sunscreen active ingredients*, J. Am. Acad. Dermatology (2019).

14.    **Coral Bleaching.** Relevant to this matter, certain chemicals found in sunscreens, like the Products, lead to the "bleaching" of coral reefs, resulting in death and damage, as depicted below:[12]



**Left: Bleached Coral**                          **Right: Healthy Coral**

15.    **Chemicals in Sunscreens Cause Coral Bleaching.** According to studies, up to 14,000 tons of sunscreen are estimated to wash into coral reefs around the globe each year.[13] The chemical compounds found in sunscreen products, like the Products, that wash into coral reefs can cause abrupt and complete bleaching of hard corals, even at extremely low concentrations.[14]

---

[12] *What is a Coral Reef*, Save The Reef, https://savethereef.org/about.html (last accessed Jan. 27, 2022).

[13] Schneider, *supra* note 10.

[14] John Tibbetts, *Bleached, But Not by the Sun: Sunscreen Linked to Coral Damage*, NCBI (Apr. 2008) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2291012/ (last accessed Jan. 27, 2022); *Protect Yourself and Protect the Reef*, National Park Service, https://www.nps.gov/articles/protect-yourself-and-protect-the-reef.htm (last accessed Jan. 27, 2022).

16.     The National Ocean Service, an agency within the U.S. Department of Commerce National Oceanic and Atmospheric Administration ("**NOAA**") published the following infographic that demonstrates the harm that the chemicals found in sunscreens, like the Products, can have on coral reefs and related marine life:[15]

17.     **Consumer Demand for Reef Friendly Sunscreens.** In recent years, consumers



have become increasingly concerned about protecting reefs through individual action, including purchasing reef-friendly personal care products, in particular sun care and sun protection products, which are free from chemicals that can harm reefs, including the coral reefs and marine life that inhabits and depends on them. Thus, reef-friendly personal care products, in particular sun care products such as sunscreens and sun blocks, are rapidly increasing in popularity due to their perceived positive ecological impact.[16]

---

[15] *Skincare Chemicals and Coral Reefs*, National Oceanic and Atmospheric Administration, https://oceanservice.noaa.gov/news/sunscreen-corals.html (last accessed Jan. 27, 2022).

[16] *Reef Safe Sunscreen Guide*, Save the Reef, https://savethereef.org/about-reef-save-sunscreen.html (last accessed Jan. 27, 2022); Margaux Anbouba, *9 Reasons Why You Should Switch to a Reef Safe Sunscreen*, Elle (May 29, 2020), https://www.elle.com/beauty/makeup-skin-

17

18.     **Governmental Regulatory Agencies' and Standard Dictionary Definitions:**

    a.  **Dictionary - Friendly.** The Merriam-Webster standard dictionary defines "friendly" as "not causing or likely to cause harm."[17]

    b.  **Dictionary – Eco-Friendly.** The Merriam-Webster standard dictionary defines "eco- friendly" as "not environmentally harmful."[18]

    c.  **FTC Green Guides.** In response to consumer fraud, the United States Federal Trade Commission ("FTC") created the "Green Guides" to help companies avoid making misleading and deceptive claims.[19] As relevant here, the FTC warns reasonable consumers are likely to interpret eco-friendly and similar environmental claims to mean that the products pose no risk to the environment, including animals.[20]

19.     **Harmful Ingredients.** Avobenzone, homosalate, octisalate and octocrylene (collectively, "**Harmful Ingredients**") are chemicals that are well documented as being harmful to reefs, including coral reefs and the marine life that inhabit and depend on them.

20.     **Avobenzone.** Avobenzone is a known endocrine disruptor and is typically used in the place of oxybenzone, another harmful chemical ingredient. When avobenzone is exposed to ultraviolet light the compound degrades and causes damage to coral reefs and aquatic life.[21]

---

care/g32685164/best-reef-safe-sunscreen/ (last accessed Jan. 27, 2022); Dorbina Zhekova and Rebecca Carhart, *How to Know If Your Sunscreen Is Killing Coral Reefs – and the Brands to Try Instead*, Travel + Leisure (Mar. 25, 2021), https://www.travelandleisure.com/style/beauty/reef-safe-sunscreen (last accessed Jan. 27, 2022).

[17]     Friendly Definition, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/friendly (last accessed Jan. 27, 2022). For example, "environmentally friendly packaging = packaging that does not damage the environment." *Id.* (brackets omitted).

[18]     Eco-Friendly Definition, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/eco-friendly (last accessed Feb. 3, 2022). The FTC finds that the term "eco-friendly" is synonymous with the term "environmentally friendly," in that is has no harmful impact on the environment or animals.

[19] See generally 16 C.F.R. § 260.1.

[20] 16 C.F.R. § 260.4 (finding unqualified general environmental benefit claims "convey that the item or service has no negative environmental impact.").

[21] Joanna Ruszkiewicz, et al., *Neurotoxic effect of active ingredients in sunscreen products, a contemporary review*, NCBI, doi: 10.10/16/j.toxrep.2017.05 (2017),

Furthermore, avobenzone may kill corals' cells which induces a bleaching effect on them.[22] Avobenzone can reduce coral resilience against high ocean temperatures, resulting in increased coral death worldwide.[23]

21. **Octocrylene**. Octocrylene is a chemical UV-filter and produces benzophenone, which is a mutagen, carcinogen, and endocrine disruptor.[24] It is associated with a wide range of toxicities, including genotoxicity, carcinogenicity, and endocrine disruption. Octocrylene has been shown to accumulate in various types of aquatic life and cause DNA damage, developmental abnormalities, and adverse reproductive effects.[25] Bioaccumulation of this chemical leads to endocrine disruption, alteration of gene transcription, and developmental toxicity in fish[26], dolphins, sea urchins, and other marine life.[27] In addition, octocrylene adversely impacts coral

---

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5615097/#bib0635 (last accessed Jan. 27, 2022); *see* C.A. Downs, et. al., *Benzophenone Accumulates over Time from the Degradation of Octocrylene in Commercial Sunscreen Products,* ACS (2021), https://pubs.acs.org/doi/10.1021/acs.chemrestox.0c00461 (last accessed Jan. 27, 2022); *Hawai'i Senate Bill Bans Harmful Sunscreen Chemicals*, Center for Biological Diversity (Mar. 9, 2021), https://biologicaldiversity.org/w/news/press-releases/hawaii-senate-bill-bans-harmful-sunscreen-chemicals-2021-03-09/ (last accessed Jan. 27, 2022).

[22] *Id.*

[23] *Id.*

[24] Downs, *supra* note 20.

[25] Pablo Gago-Ferrero, et al., *First determination of UV filters in marine mammals. Octocrylene levels in Franciscana dolphins*, PubMed (June 2013), pp. 5619–25, doi:10.1021/es400675y, https://pubmed.ncbi.nlm.nih.gov/23627728/ (last accessed Dec. 6, 2021); Nancy Blüthgen, et al., *Accumulation and effects of the UV-Filter octocrylene in adult and embryonic zebrafish (Danio Rerio),* PubMed, doi: 10.1016/j.scitotenv.2014.01.015 (2014), https://pubmed.ncbi.nlm.nih.gov/24463256/#:~:text=Wide%20application%20of%20the%20UV-filter%20octocrylene%20%28OC%29%20in,embryos%20to%2069%2C%20293%20and%2092 5%20%CE%BCg%2FL%20OC (last accessed Jan. 27, 2022).Qiuya Y. Zhang, et al., *Assessment of multiple hormone activities of a UV-filter (octocrylene) in zebrafish (Danio rerio)*, (Sept. 2016), pp. 433–41, doi:10.1016/j.chemosphere.2016.06.037 (last accessed Jan. 27, 2022).

[26] Much of the scientific literature studying the toxicity of the Harmful Ingredients on aquatic life is conducted using zebrafish, which are a recommended "fish receptor model" for evaluating toxicology in aquatic life.  *See e.g.* Yu-jie Dai, et al., *Zebrafish as a model system to study toxicology*, Environmental Toxicology and Chemistry (December 2013), doi: 10.1002/etc.2406, https://doi.org/10.1002/etc.2406 (last accessed January 31, 2022).

[27] Blüthgen, *supra* note 17; Schneider, *supra* note 10.

reefs, even at low concentrations, by accumulating in coral tissue and triggering mitochondrial dysfunction.[28]

22.   **Homosalate.** Homosalate also has harmful effects similar to octocrylene. Homosalate is an endocrine disruptor because it impacts the body's hormone systems, particularly the estrogen system and related androgen and progesterone systems.[29] Additionally, homosalate

---

[28] Didier Stien, et al., *Metabolomics Reveal That Octocrylene Accumulates in Pocillopora Damicornis Tissues as Fatty Acid Conjugates and Triggers Coral Cell Mitochondrial Dysfunction*, Analytical Chemistry, vol. 91, no. 1 (Jan. 2019), pp. 990–95, doi:10.1021/acs.analchem.8b04187, https://pubmed.ncbi.nlm.nih.gov/30516955/ (last accessed Jan. 27, 2022).

[29] *EWG's Sunscreen Guide*, EWG, https://www.ewg.org/sunscreen/report/executive-summary/ (last accessed Jan. 27, 2022); *Homosalate*, Campaign for Safe Cosmetics, https://www.safecosmetics.org/get-the-facts/chemicals-of-concern/homosalate/ (last accessed Jan. 27, 2022); Richard Schreurs, et al., *Estrogenic Activity of UV Filters Determined by an In Vitro Reporter Gene Assay and an In Vivo Transgenic Zebrafish Assay*, 76 Archives of Toxicology, pp. 257-261 (June 2002), https://link.springer.com/article/10.1007/s00204-002-0348-4 (last accessed Jan. 27, 2022); Petra Y. Kunz, et al., *Multiple hormonal activities of UV filters and comparison of in vivo and in vitro estrogenic activity of ethyl-4-aminobenzoate in fish*, 79 Aquatic Toxicology, pp. 305-324 (Issue No. 4, Oct. 2006), https://www.sciencedirect.com/science/article/abs/pii/S0166445X06002700 (last accessed Jan. 27, 2022); I. Jiménez-Díaz, et al., *Simultaneous determination of the UV-filters benzyl salicylate, phenyl salicylate, octyl salicylate, homosalate, 3-(4-methylbenzylidene) camphor and 3-benzylidene camphor in human placental tissue by LC-MS/MS. Assessment of their in vitro endocrine activity*, 936 Journal of Chromatography Biomed Life Sci., pp. 80-87 (Oct. 2013), doi: 10.1015/j.jchromb.2013.08.006, https://pubmed.ncbi.nlm.nih.gov/24004914/ (last accessed Jan. 27, 2022); Risheng Ma, et al., *UV Filters with Antagonistic Action at Androgen Receptor in the MDA-kb2 Cell Transcriptional-Activation Assay*, 74 Toxicological Sciences, pp/ 43-50 (Issue No. 1, July 2003), https://academic.oup.com/toxsci/article/74/1/43/1664165 (last accessed Jan. 27, 2022) ; Krause, M., et al., *Sunscreens: are they beneficial for health? An overview of endocrine disrupting properties of UV-filters*, 35 International Journal of Andrology, pp. 424-436, doi: 10/1111/j.1365-2605.2012.01280.x, (Issue No. 3, June 2012), https://pubmed.ncbi.nlm.nih.gov/22612478/ (last accessed Jan. 27, 2022); Richard H. M. M. Schreurs, *Interaction of polycyclic musks and UV filters with the estrogen receptor (ER), androgen receptor (AR), and progesterone receptor (PR) in reporter gene bioassays*, 83 Toxicological Sciences, pp. 264-272 (Nov. 2005), https://pubmed.ncbi.nlm.nih.gov/15537743/ (last accessed Jan. 27, 2022); Margret Schlumpf, et al., *Exposure patterns of UV filters, fragrances, parabens, phthalates, organochlor pesticides, PBDEs, and PCBs in human milk: correlation of UV filters with use cosmetics*, 81 Chemosphere, pp. 1171-1183 (Nov. 2010), https://pubmed.ncbi.nlm.nih.gov/21030064/ (last accessed Dec. 6, 2021); E. Chatelain, et al., *Skin penetration and sun protection factor of five UV filters: effect of the vehicle*, 16 Skin Pharmacology and Applied Skin Physiology, pp. 28-35 (Issue No. 1, Jan.-Feb. 2003), https://pubmed.ncbi.nlm.nih.gov/12566826/ (last accessed Jan. 27, 2022); Vikram Sarveiya, et al., *Liquid Chromatographic Assay for Common Sunscreen Agents: Application to In Vivo Assessment of Skin Penetration and Systemic Absorption in Human Volunteers*, 803 Journal of

enhances the body's absorption of pesticides.[30] This hormone disruption, as well as the increased pesticide absorption, cause harm to coral reefs and aquatic organisms.[31]

23. **Octisalate.** Octisalate also has similar harmful effects to the environment and coral reefs. Octisalate is frequently detected in coral reefs and, unfortunately, common wastewater treatments cannot remove this chemical, leading octisalate to accumulate and negatively affect coral reef ecosystems and marine organisms.[32] The toxicity of this chemical contributes to the bleaching of coral reefs, which ultimately leads to coral extinction.[33]

24. **The HEL—Octocrylene.** The Haereticus Environmental Laboratory ("**HEL**") is a nonprofit organization that specializes in research and advocacy in a number of areas including sunscreens, and how their ingredients impact natural environmental habitats. Regarding certain

---

Chromatography, pp. 225-231 (Issue No. 2, Apr. 2004), https://pubmed.ncbi.nlm.nih.gov/15063329/ (last accessed Jan. 27, 2022); Tae Hwan Kim, et al.., *Percutaneous Absorption, Disposition, and Exposure Assessment of Homosalate, a UV Filtering Agent, in Rats*, 77 Journal of Toxicology and Environmental Health A., pp. 202-213 (Issue No. 4, 2014), https://pubmed.ncbi.nlm.nih.gov/24555679/ (last accessed Jan. 27, 2022); Rhonda M. Brand, et al., *Sunscreens Containing Physical UV Blockers Can Increase Transdermal Absorption of Pesticides*, 19 Toxicology and Industrial Health, pp. 9-16, doi: 10.1191/0748233703th169oa (Feb. 2003), https://pubmed.ncbi.nlm.nih.gov/15462532/#:~:text=This%20work%20has%20been%20extende d%20to%20determine%20whether,oxide%20%28ZnO%29%20enhance%20the%20transdermal %20absorption%20of%20pesticides (last accessed Jan. 27, 2022); Adam Pont, et al., *Active Ingredients in Sunscreens Act as Topical Penetration Enhancers for the Herbicide 2,4-Dichlorophenoxyacetic Acid*, 195 Toxicology and Applied Pharmacology, pp. 348-354, doi: 10.1016/j.taap.2003.09.021 (Mar. 2004), https://pubmed.ncbi.nlm.nih.gov/15020197/ (last accessed Jan. 27, 2022).

[30] *Id.*

[31] *Id.*

[32] Lydia Ouchene, et al., *Hawaii and Other Jurisdictions Ban Oybenzone or Octionaxte Sunscreens Based on the Confirmed Adverse Environmental Effects of Sunscreen Ingredients on Aquatic Environments*, Journal of Cutaneous Medicine and Surgery, p. 648, doi: 10.1177/1200475419871592 (Nov./Dec. 2019), https://pubmed.ncbi.nlm.nih.gov/31729915/ (last accessed Jan. 27, 2022).

[33] *Id.*

harmful ingredients used in sunscreens, the HEL reports that octocrylene is a chemical that causes harm and/or can kill coral reefs, and poses a substantial threat to ecosystem health.[34]

25.     **The NOS—Octocrylene.** The National Ocean Service ("**NOS**") also advocates against the use of certain chemicals, including octocrylene, in the use of sunscreen because of the severe negative impact that it has on coral reefs, such as tissue accumulation, bleaching, DNA damage, deformation of infant coral, and coral death.[35] The NOS classifies octocrylene as a threat to coral reefs, as well as marine ecosystems.[36]

26.     **The Hawaii Center for Biological Diversity (the "Center")—Octocrylene & Avobenzone.** The Center is petitioning the FDA for a national ban on chemicals, like octocrylene and avobenzone, in sunscreens that harm and kill the coral reefs.[37] The center is also advocating for a statewide ban of octocrylene and avobenzone in sunscreens, noting the toxic impacts these chemicals have on the coral reefs and marine life.[38]

27.     **FDA Petition—Octocrylene.** In fact, a larger group of researchers have also petitioned the FDA to remove from sale all sunscreens that contain octocrylene.[39] This is because products made with octocrylene may contain benzophenone, a known carcinogen, which is considered to be an endocrine, metabolic, and reproductive disruptor.[40]

---

[34] *Protect Land + Sea Certification*, Haereticus Environmental Laboratory (2018), http://haereticus-lab.org/protect-land-sea-certification-3/ (last accessed Jan. 27, 2022).

[35] *Skincare Chemicals and Coral Reefs*, National Oceanic and Atmospheric Administration, https://oceanservice.noaa.gov/news/sunscreen-corals.html (last accessed Jan. 27, 2022).

[36] *Id.*

[37] *Hawai'i Senate Bill Bans Harmful Sunscreen Chemicals*, Center for Biological Diversity (March 9, 2021), https://biologicaldiversity.org/w/news/press-releases/hawaii-senate-bill-bans-harmful-sunscreen-chemicals-2021-03-09/ (last accessed Jan. 27, 2022).

[38] *Id.*

[39] Anna Edney, *Popular sunscreens under scrutiny as scientists cite another potential carcinogen*, Los Angeles Times (Aug. 10, 2021), https://www.latimes.com/business/story/2021-08-10/sunscreen-fda-carcinogen-benzophenone-octocrylene-concerns (last accessed Dec. 6, 2021); Julia John, *Scientists ask US FDA to recall octocrylene-containing products*, Chemical Watch (Aug. 11, 2021), https://chemicalwatch.com/315052/scientists-ask-us-fda-to-recall-octocrylene-containing-products (last accessed Jan. 27, 2022).

[40] *Id.*

28.     **Hawaii Legislature—Octocrylene & Avobenzone.** In 2018, state lawmakers banned oxybenzone and octinoxate from being included as ingredients in sunscreens sold in Hawaii because of their deleterious impact on coral reefs and dependent marine life. In 2021, state lawmakers amended the bill to also ban the sale of sunscreens that contain avobenzone and octocrylene starting in 2023.[41] Octocrylene was banned because it can disrupt human hormones and has a toxic impact on aquatic ecosystems, including coral reefs.[42] Avobenzone was banned because it is "an endocrine disruptor and can reduce coral resilience against the high ocean temperatures that are killing corals worldwide."[43]

29.     **International Bans—Octocrylene & Homosalate.** In June 2019, the US Virgin Islands banned sunscreens containing octocrylene, oxybenzone, and octinoxate, with the ban effective beginning March 2020.[44]   The Republic of the Marshall Islands has also banned avobenzone. In addition, Palau, Bonaire, and the nature reserve areas in Mexico have approved legislation for similar bans, and a similar ban is being discussed in Brazil and the EU.[45] Furthermore, the European Commission has recently recommended that homosalate was not safe to use at certain concentrations and should have a maximum concentration of 1.4 percent.[46] Scientists in the United States have likewise raised concerns about the toxic nature of these ingredients, as well as homosalate, and believe they also have a harmful impact on reefs.[47]

---

[41]     *Hawaii       Senate       Bill       132*,       Hawaii       State       Legislature, https://www.capitol.hawaii.gov/measure_indiv.aspx?billtype=SB&billnumber=132&year=2021 (last accessed Jan. 27, 2022).

[42] *Bill would prohibit sale of sunscreen products containing avobenzone and octocrylene*, West Hawaii   Today   (March   10,   2021),   https://www.westhawaiitoday.com/2021/03/10/hawaii-news/bill-would-prohibit-sale-of-sunscreen-products-containing-avobenzone-and-octocrylene/ (last accessed Jan. 27, 2022).

[43] *Id.*

[44] Shanthi Narla, et. al., *Sunscreen: FDA regulation, and environmental and health impact*, Royal Society        of        Chemistry        (Nov.        22,        2019), https://pubs.rsc.org/en/content/articlehtml/2019/pp/c9pp00366e (last accessed Jan. 27, 2022).

[45] *Id.*

[46] *The   trouble   with   ingredients   in   sunscreens*,   Environmental   Working   Group, https://www.ewg.org/sunscreen/report/the-trouble-with-sunscreen-chemicals/ (last accessed Jan. 27, 2022).

[47] Changwon Yang, et al., *Homosalate Aggravates the Invasion of Human Trophoblast Cells as Well as Regulates Intracellular Signaling Pathways Including PI3K/AKT and MAPK Pathways*,

30. **The EWG—Octisalate**. The EWG warns consumers that the harmful effect of Octisalate, to the human body and aquatic ecosystems, is mostly uncertain because there is insufficient data to determine whether this chemical is safe to use in sun protectants and sunscreens.21F[48] Octisalate is frequently detected in coral reefs and, unfortunately, common wastewater treatments cannot remove this chemical, leading octisalate to accumulate and negatively affect the coral reef ecosystems and marine organisms.[49] The toxicity of this chemical contributes to the bleaching of coral reefs, which ultimately leads to coral extinction.[50]

31. **The Kohala Center—Avobenzone, Homosalate, Octisalate, and Octocrylene.** The Kohala Center ("**KC**") is an independent, community-based center for research, conservation, and education in Hawai'i focusing on energy, self-reliance, and ecosystem health.[51] The KC cautions consumers to never use products containing avonbenzone, homosalate, octisalate, or octocrylene.[52]

32. **Consumers' Desire for Reef Friendly Products.** Consequently, because of the ecological concerns about sun care products (such as sunscreens and sun blocks), consumers

---

243 Environmental Pollution, pp. 1263-73 (Vol. 243, Dec. 2018), https://europepmc.org/article/med/30267922 (last accessed Jan. 27, 2022); Chang-Beom Park, et al., *Single- and Mixture Toxicity of Three Organic UV-Filters, Ethylhexyl Methoxycinnamate, Octocrylene, and Avobenzone on Daphnia Magna*, 137 Ecotoxicology and Environmental Safety, pp. 57-63, doi: 10.1016/j/ecoenv.2016.11.017 (Mar. 2017), https://www.researchgate.net/publication/311425878_Single-_and_mixture_toxicity_of_three_organic_UV-filters_ethylhexyl_methoxycinnamate_octocrylene_and_avobenzone_on_Daphnia_magna (last accessed Jan. 27, 2022); Shaun McCoshum, et al., *Direct and Indirect Effects of Sunscreen Exposure for Reef Biota*, 776 Hydrobiologia 139-46 (Issue No. 1, Aug. 2016), https://www.researchgate.net/publication/299423358_Direct_and_indirect_effects_of_sunscreen_exposure_for_reef_biota (last accessed Jan. 27, 2022); D.M.E. Slijkerman and M. Keur, *Sunscreen Ecoproducts: Product Claims, Potential Effects and Environmental Risks of Applied UV Filters*, Wageningen Marine Research (Oct. 2018), https://research.wur.nl/en/publications/sunscreen-ecoproducts-product-claims-potential-effects-and-enviro (last accessed Jan. 27, 2022).

[48] *The trouble with ingredients in sunscreens*, *supra* note 37.

[49] Ouchene, *supra* note 23.

[50] *Id.*

[51] *About the Kohala Center*, The Kohala Center, https://kohalacenter.org/about (last accessed Jan. 27, 2022).

[52] *Are you using Mineral Sunscreen?*, The Kohala Center, https://kohalacenter.org/kbec/sun-protection (last accessed Jan. 27, 2022).

have increasingly sought out products that are reef-friendly and otherwise do not harm reefs, including coral reefs and the marine life that inhabit and depend on them. As a result, sales have surged in recent years for consumer personal care and sun care products advertised with "reef friendly," "reef safe," "reef conscious," and similar claims.

## B.    <u>The Products' Misleading and Deceptive Labeling</u>

33.    **Products.** As described *supra*, Defendant manufactures, markets, advertises, labels, packages, and sells the Products.

34.    **Challenged Representation on Products' Labels.** Also as described *supra*, Defendant falsely and misleadingly labels the Products with the Challenged Representation. The Challenged Representation is conspicuous. It is prominently placed on each Product's primary display panel of the front label or packaging. The front primary display panel contains scant imagery and information about the Products, largely limited to the brand name, identity of the product (e.g., sunscreen), and one or a few claims about the Products' attributes (e.g., size). The Challenged Representation is stated in clear, legible, and highly visible font, including a relatively large typeface that starkly contrasts with the background color and imagery. The net-effect or net-impression on consumers who view the Products is that their attention is drawn to the Challenged Representation. *See* **Exhibit 1** [Product Images].

35.    **Consumers Reasonably Rely on the Challenged Representation.** Based on the Challenged Representation, reasonable consumers believe that the Products are safe for reefs. Put differently, reasonable consumers believe the Products do not contain any ingredients that can harm reefs, including coral reefs and the marine life that inhabits and relies on them, as a result of the Challenged Representation.

36.    **Harmful Chemicals Contained in the Products.** In spite of the Products' labeling, they contain Harmful Ingredients, including avobenzone, homosalate, octisalate, and octocrylene, which are chemicals that harm reefs, including coral reefs and the marine life that inhabits them. As summarized below, the Products contain the following Harmful Ingredients:

**(1) Hawaiian Tropic® *AntiOxidant* Sunscreen (Lotion, SPF 30, 6-oz)**
- Avobenzone: 2.2 %
- Homosalate: 7 %

- Octocrylene: 4.2 %

*See* **Exhibit 1-1** (AntiOxidant Sunscreen SPF 30)

**(2) Hawaiian Tropic® *Island Sport* Sunscreen (Lotion, SPF 15, 8-oz)**
- Avobenzone: 2 %
- Homosalate: 3 %
- Octisalate: 2 %
- Octocrylene: 3 %

*See* **Exhibit 1-2** (Island Sport Sunscreen Lotion SPF 15)

**(2) Hawaiian Tropic® *Island Sport* Sunscreen (Lotion, SPF 30, 8-oz)**
- Avobenzone: 2 %
- Homosalate: 7 %
- Octocrylene: 4.2 %

*See* **Exhibit 1-3** (Island Sport Sunscreen Lotion SPF 30)

**(2) Hawaiian Tropic® *Island Sport* Sunscreen (Lotion, SPF 50, 8-oz)**
- Avobenzone: 2.7 %
- Homosalate: 9 %
- Octisalate: 4%
- Octocrylene: 5 %

*See* **Exhibit 1-4** (Island Sport Sunscreen Lotion SPF 50)

**(2) Hawaiian Tropic® *Island Sport* Sunscreen (Spray, SPF 15, 6-oz)**
- Avobenzone: 1.5 %
- Homosalate: 5 %
- Octocrylene: 3.5 %

*See* **Exhibit 1-5** (Island Sport Sunscreen Spray SPF 15)

**(2) Hawaiian Tropic® *Island Sport* Sunscreen (Spray, SPF 30, 6-oz)**
- Avobenzone: 2 %
- Homosalate: 7 %
- Octocrylene: 5 %

*See* **Exhibit 1-6** (Island Sport Sunscreen Spray SPF 30)

**(2) Hawaiian Tropic® *Island Sport* Sunscreen (Spray, SPF 50, 6-oz)**
- Avobenzone: 2.7 %
- Homosalate: 9 %
- Octisalate: 4.5 %
- Octocrylene: 4.5 %

*See* **Exhibit 1-7** (Island Sport Sunscreen Spray SPF 50)

**(3) Hawaiian Tropic® *Island Tanning* Oil (Spray, SPF 6, 8-oz)**
- Avobenzone: 1 %
- Octocrylene: 3 %

*See* **Exhibit 1-8** (Island Tanning Oil SPF 6)

**(4) Hawaiian Tropic®** *Lip Balm* **Sunscreen (Stick, SPF 25, 0.14-oz)**
- Avobenzone: 3 %
- Octisalate: 5 %
- Octocrylene: 10 %

*See* **Exhibit 1-9** (Lip Balm Sunscreen SPF 25)

**(5) Hawaiian Tropic®** *Matte Effect* **Sunscreen (Lotion, SPF 30, 6-oz)**
- Homosalate: 6 %
- Octisalate: 4.5 %
- Octocrylene: 4.5 %

*See* **Exhibit 1-10** (Matte Effect Sunscreen SPF 30)

**(5) Hawaiian Tropic®** *Matte Effect* **Sunscreen (Lotion, SPF 50+, 6-oz)**
- Homosalate: 8 %
- Octisalate: 4.5 %
- Octocrylene: 5.7 %

*See* **Exhibit 1-11** (Matte Effect Sunscreen SPF 50+)

**(6) Hawaiian Tropic®** *Sheer Touch* **Sunscreen (Lotion, SPF 15, 8-oz)**
- Avobenzone: 2 %
- Homosalate: 3 %
- Octisalate: 2 %
- Octocrylene: 3 %

*See* **Exhibit 1-12** (Sheer Touch Sunscreen SPF 15)

**(6) Hawaiian Tropic®** *Sheer Touch* **Sunscreen (Lotion, SPF 30, 8-oz)**
- Avobenzone: 2.2 %
- Homosalate: 7 %
- Octocrylene: 4.2 %

*See* **Exhibit 1-13** (Sheer Touch Sunscreen SPF 30)

**(6) Hawaiian Tropic®** *Sheer Touch* **Sunscreen (Lotion, SPF 50, 8-oz)**
- Avobenzone: 2.7 %
- Homosalate: 9 %
- Octisalate: 4 %
- Octocrylene: 5 %

*See* **Exhibit 1-14** (Sheer Touch Sunscreen SPF 50)

**(7) Hawaiian Tropic®** *Silk Hydration* **Sunscreen (Face Lotion, SPF 30, 1.7-oz)**
- Avobenzone: 2 %
- Homosalate: 5.5 %
- Octisalate: 4.5 %
- Octocrylene: 4 %

*See* **Exhibit 1-15** (Silk Hydration Sunscreen Face Lotion SPF 30)

**(7) Hawaiian Tropic®** *Silk Hydration* **Sunscreen (Lotion, SPF 30, 6-oz)**
- Avobenzone: 2 %

- Homosalate: 5.5 %
- Octisalate: 4.5 %
- Octocrylene: 4 %

*See* **Exhibit 1-16** (Silk Hydration Sunscreen Lotion SPF 30)

**(7) Hawaiian Tropic®** *Silk Hydration* **Sunscreen (Lotion, SPF 50, 6-oz)**
- Avobenzone: 2.7 %
- Homosalate: 8 %
- Octisalate: 4 %
- Octocrylene: 4.5 %

*See* **Exhibit 1-17** (Silk Hydration Sunscreen Lotion SPF 50)

**(7) Hawaiian Tropic®** *Silk Hydration* **Sunscreen (Oil Mist, SPF 15, 5-oz)**
- Avobenzone: 1.5 %
- Homosalate: 5 %
- Octocrylene: 3.5 %

*See* **Exhibit 1-18** (Silk Hydration Sunscreen Oil Mist SPF 15)

**(7) Hawaiian Tropic®** *Silk Hydration* **Sunscreen (Oil Mist, SPF 30, 5-oz)**
- Avobenzone: 2 %
- Homosalate: 6 %
- Octisalate: 4.5 %
- Octocrylene: 6 %

*See* **Exhibit 1-19** (Silk Hydration Sunscreen Oil Mist SPF 30)

**(7) Hawaiian Tropic®** *Silk Hydration* **Sunscreen (Spray, SPF 50, 6-oz)**
- Avobenzone: 2.7 %
- Homosalate: 9 %
- Octisalate: 4.5 %
- Octocrylene: 7 %

*See* **Exhibit 1-20** (Silk Hydration Sunscreen Spray SPF 50)

37.    **True Reef Friendly Sunscreens.** True reef-friendly sun care products do not contain any ingredients, like the Harmful Ingredients in the Products, that can harm reefs, including the coral reefs and the marine life that inhabits and depends on them. This includes mineral-based sunscreens that use ingredients like zinc oxide and titanium dioxide, instead of the Harmful Ingredients. Many environmental organizations have favored these sunscreens because, based on current data, they have been found to be safe for people, the environment, and aquatic life, like reefs. However, manufacturers, such as Defendant, "greenwash" their Products by labeling them with environmentally and eco-friendly claims, such as the Challenged Representation, to charge consumers a premium for reef-friendly products, gain an unfair advantage over their competitors,

and defraud consumers into buying the Products even though they do not conform to the Challenged Representation and, instead, contain the Harmful Ingredients that harm reefs, including coral reefs and the marine life that inhabits and depends on them.

**C.    Plaintiff and Reasonable Consumers Were Misled by the Products**

38.    **Deception.** Defendant's labeling and advertising of the Products with the Challenged Representation, when they are not reef-friendly because they contain the Harmful Ingredients which can harm reefs, misleads and deceives reasonable consumers, including Plaintiff, into purchasing the Products to their financial detriment.

39.    **Misrepresentation/Omission.** As set forth herein, the Challenged Representation misrepresents that the Products do not contain ingredients that are unsafe for reefs and that the Products' ingredients otherwise could not harm reefs, including coral reefs and the marine life that inhabits and depends on them, because the Products actually contain Harmful Ingredients that are unsafe for, and can otherwise harm, reefs, including coral reefs and/or the marine life that inhabits and depends on them.

40.    **Material.** The Challenged Representation was and is material to reasonable consumers, including Plaintiff, in making the decision to purchase the Products, as set forth herein.

41.    **Reliance.** Reasonable consumers, including Plaintiff, relied on the Challenged Representation in deciding to purchase the Products, as set forth herein.

42.    **Consumers Lack Knowledge of Falsity.** Consumers, including Plaintiff, who purchased the Products, did not know, and had no reason to know, at the time of purchase, that the Products' Challenged Representation was false, misleading, deceptive, and unlawful as set forth herein.

43.    **Defendant's Knowledge.** Defendant knew, or should have known, that the Challenged Representation was false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representation, and Defendant intentionally and deliberately used the Challenged Representation to cause Plaintiff and similarly situated consumers to buy them believing that the

Products could not harm reefs (including coral reefs and the marine life that inhabits and depends on them).

a.   The conspicuousness of the Challenged Representation on the Products' labels and repeated use of the Challenged Representation in advertisements demonstrate Defendant's awareness of the materiality of this representation and understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representation.

b.   Generally, manufacturers and marketers repeat marketing messages to emphasize and characterize a brand or product line. Similarly, they reserve the front primary display panel of labels on consumer products of similar dimensions for the most important and persuasive information that they believe will motivate consumers to buy the products.

c.   Defendant, as the manufacturer, formulated the Products with the Harmful Ingredients and otherwise approved their inclusion in the Products. Defendant, as the manufacturer, had exclusive control over the Challenged Representation's inclusion on the Products' labels and in their advertisements—i.e., Defendant readily and easily could have removed the Challenged Representation or refrained from using it on the labels and advertisements of the Products.

d.   Defendant is and was, at all times, statutorily required to ensure it has adequate substantiation for the Challenged Representation prior to labeling the Products, advertising the Products, and selling the Products anywhere in the United States. Here, adequate substantiation and compliance with regulatory law require reliable scientific evidence that supports such far-reaching environmentally-friendly and/or eco-friendly claims as the Challenged Representation.

e.   Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representation is false and/or deceptive and that reasonable consumers, such as Plaintiff, are being misled into buying the Products based on the belief that the Products are reef-friendly. In this way, Defendant either intentionally or

recklessly defrauded consumers, including Plaintiff, into buying the Products.

44.     **Detriment.** Plaintiff and similarly situated consumers would not have purchased the Products, or would not have purchased the Products for as great a price, if they had known that the Challenged Representation was false and, therefore, the Products did not have the attribute claimed, promised, warranted, advertised, and represented. Accordingly, based on Defendant's material misrepresentations and omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

**D.     The Products are Substantially Similar**

45.     As described herein, Plaintiff purchased the Purchased Product. The additional Products identified above in paragraph 4 *supra* (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Product.

a.  **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

b.  **Brand.** All Products are sold under the same brand name: Hawaiian Tropic®.

c.  **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

d.  **Purpose.** All Products are sun care products primarily designed to provide protection from the sun.

e.  **Application.** All Products are applied in the same manner—topically; directly onto the skin, lips, and/or body surfaces.

f.  **Misrepresentations.** All Products contain the same Challenged Representation conspicuously and prominently placed on the primary display panel of the front label.

g.  **Packaging.** All Products are packaged in similar packaging.

h.  **Key Ingredients.** All Products contain the same exact Harmful Ingredients.

i.  **Misleading Effect.** The misleading effect of the Challenged Representation on consumers is the same for all Products—consumers pay for reef-friendly products, but receive products that are not reef-friendly and otherwise can harm

reefs, including coral reefs and the marine life that inhabits and depends on them.

## CLASS ACTION ALLEGATIONS

46.     **Incorporation by Reference.** Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

47.     **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products for purposes other than resale ("**Nationwide Class**"); and

> All residents of New York who, within the applicable statute of limitation period, purchased the Products for purposes other than resale ("**New York Subclass**").

("**Nationwide Class**" and "**New York Subclass**," collectively, "**Class**").

48.     **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

49.     **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

50.     **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the New York Subclass

likewise consists of thousands of purchasers (if not more) dispersed throughout the State of New

York. Accordingly, it would be impracticable to join all members of the Class before the Court.

51.     **Common Questions Predominate:** There are numerous and substantial questions

of law or fact common to all members of the Class that predominate over any individual issues.

Included within the common questions of law or fact are:

a.     Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.     Whether Defendant made false and/or misleading statements to the consuming public concerning the "Reef Friendly" claims on the Products;

c.     Whether Defendant's labeling and packaging of the Products is misleading and/or deceptive;

d.     Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

e.     Whether Defendant represented that the Products have characteristics, benefits, or qualities it does not have;

f.     Whether Defendant advertised the Products with intent not to sell them as advertised;

g.     Whether Defendant falsely advertised the Products;

h.     Whether Defendant's conduct constitutes breach of express and/or implies warranties;

i.     Whether Defendant's conduct caused injury to Plaintiff and the Class; and

j.     Whether Plaintiff and the Class are entitled to damages.

52.     **Typicality**:  Plaintiff's claims are typical of the claims of the Class Members she

seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading

and deceptive Products.  Defendant's unlawful, unfair and/or fraudulent actions concern the same

business practices described herein irrespective of where they occurred or were experienced.

Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiff's

and Class Members' claims arise from the same practices and course of conduct and are based

on the same legal theories.

53.     **Adequacy**: Plaintiff is an adequate representative of the Class he seeks to represent

because her interests do not conflict with the interests of the Class Members Plaintiff seeks to

represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

54.     **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.     The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.     Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

c.     Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.     When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.     This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

55.     **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

56.     **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

<u>**COUNT ONE**</u>
**Violation of New York's Gen. Bus. Law § 349**
**(*On Behalf of the New York Subclass*)**

57.     **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

58.     **New York Subclass.** This cause of action is brought pursuant to New York's Gen. Bus. Law section 349, *et seq*., on behalf of Plaintiff and a New York Subclass who purchased the Products within the applicable statute of limitations.

59.     **Deceptive Trade Practices Act.** New York Gen. Bus. Law, sections 349, *et seq.* prohibits the "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state."

60.     **Defendant's Deceptive Acts.** Defendant, in its advertising and packaging of the Products, made false, misleading, and deceptive representations and/or omissions about the purported Reef Friendly nature of the Products to mislead consumers into believing the Products were Reef Friendly, when they are not.

61.     **Defendant's Deceptive Actions Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products are truly reef-friendly and do not harm and/or kill coral reefs.

62.     **Deceptive & Material Challenged Representation.** Defendant used the Reef Friendly Representation with the intent to sell the Products to consumers, including Plaintiff and the New York Subclass. The Challenged Representation is false, and Defendant knew or should have known of its falsity. The Challenged Representation is likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.  Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Sunscreen Products were Reef Friendly, when they are not.  By advertising so prominently that the Sunscreen Products were Reef Friendly, Defendant proves that information about "Reef Friendliness" is material to consumers.  As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of Sunscreen Products to unsuspecting consumers across New York.  If Defendant had advertised its Sunscreen Products truthfully and in a non-misleading fashion, Plaintiff and other New York

Subclass Members would not have purchased it or would not have paid as much as they did for them.

63.     **Reasonable and Detrimental Reliance.** Plaintiff and the New York Subclass reasonably and detrimentally relied on the material and false Challenged Representation to their detriment in that they purchased the Products.

64.     **Plaintiff Has Standing.** Plaintiff has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff purchased the Product for her own personal use.  In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that the Product was Reef Friendly, when it was not.  Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

65.     **Injury in Fact.** Plaintiff and the New York Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's Deceptive Advertising—namely Plaintiff and the New York Subclass lost the purchase price for the Products they bought from the Defendant.

66.     **Causation/Damages.** As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff and members of the New York Subclass were harmed in that they: (1) paid money for the Sunscreen Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Sunscreen Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Sunscreen Products they purchased had less value than if Defendant's representations about the purported Reef Friendly nature of the Sunscreen Products were truthful. Accordingly, Plaintiff seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

### COUNT TWO
### Violation of New York's Gen. Bus. Law § 350
### (*On Behalf of the New York Subclass*)

67.     **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all

allegations contained in this complaint, as though fully set forth herein.

68.     **New York Subclass.** Plaintiff brings this claim individually and on behalf of the New York Subclass who purchased the Products within the applicable statute of limitations.

69.     **False Advertising Standard.** The New York False Advertising Law, codified at Gen. Bus. Law section 350, *et seq.*, prohibits advertising, including labeling, that "is misleading in a material respect."

70.     **False & Material Challenged Representation Disseminated to Public.** Defendant violated section 350 when it advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Reef-Friendly Representation disseminated to the public through the Products' labeling, packaging and advertising.   These representations were false because the Products do not conform to them.  The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

71.     **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading.

72.     **Intent to sell.** Defendant's Challenged Representation was specifically designed to induce reasonable consumers, like Plaintiff and the New York Subclass, to purchase the Products.

73.     **Standing.** Plaintiff has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff purchased the Product for her own personal use.  In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that her Sunscreen Product was Reef Friendly, when it was not.  Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

74.     **Causation/Damages.** As a direct and proximate result of Defendant's misconduct, Plaintiff and members of the New York Subclass were in that they: (1) paid money for Sunscreen Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Sunscreen Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Sunscreen Products they purchased had

less value than if Defendant's representations about the Sunscreen Products' purported Reef Friendly nature were truthful. Accordingly, on behalf of herself and Members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT THREE**
**Breach of Warranty**
**(*On Behalf of the Nationwide Class and New York Subclass*)**

75.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

76.    **Nationwide Class & New York Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and New York Subclass (the Class) who purchased the Products within the applicable statute of limitations.

77.    **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Challenged Representation.

78.    **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant---to wit, that the Products, among other things, conform to the Challenged Representation.

79.     **Breach of Warranties.** Contrary to Defendant's warranties, the Products do not conform to the Challenged Representation and, therefore, Defendant breached its warranties about the Products and their qualities.

80.     **UCC 2-607 – Prelitigation Notice.** Pursuant to UCC section 2-607, prior to the filing of this complaint, on or about October 4, 2021, Plaintiff's counsel, acting on behalf of Plaintiff and members of the Class, sent Defendant a notice letter via certified mail, return receipt requested. Said Notice Letter advised Defendant that it was in violation of UCC section 2-607 and New York state consumer protection laws, as set forth above, and demanded that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom to Plaintiff and all members of the Class. The form, content, and delivery of the Notice Letter complied with UCC section 2-607.

81.     **Causation/Remedies.** As a direct and proximate result of Defendant's breach of warranties, Plaintiff and members of the Class were harmed in that they: (1) paid money for the Sunscreen Products that was not what Defendant represented; (2) were deprived of the benefit of the bargain because the Sunscreen Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Sunscreen Products they purchased had less value than if Defendant's representations about the Sunscreen Products' purported Reef Friendly nature were truthful.  Had Defendant not breached its warranties by making the false representations alleged herein, Plaintiff and Class and Subclass Members would not have purchased the Sunscreen Products or would not have paid as much as they did for them.

## PRAYER FOR RELIEF

82.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

   a.  **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

   b.  **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

   c.  **Damages/Restitution/Disgorgement:**  For  an  order  awarding  monetary

compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

d. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

e. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

f. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

g. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## I.    JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: February 3, 2022

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    */s/ Neal J. Deckant*
            Neal J. Deckant

Neal J. Deckant
Brittany S. Scott*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ndeckant@bursor.com
            bscott@bursor.com

**CLARKSON LAW FIRM, P.C.**
Katherine A. Bruce**
9255 Sunset Boulevard, Suite 804
Los Angeles, CA 90069
Telephone: 213-788-4050
Email: kbruce@clarksonlawfirm.com

**CLARKSON LAW FIRM, P.C.**
Ryan Clarkson
22525 Pacific Coast Highway
Malibu, CA 90265

Telephone: 213-788-4050
Email: rclarkson@clarksonlawfirm.com

*Pro Hac Vice Forthcoming*
**Pro Hac Vice*

*Attorneys for Plaintiff*