UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHERISE RICHARDSON, individually and on
behalf of all others similarly situated,

Plaintiff,

-against-

EDGEWELL PERSONAL CARE, LLC,

Defendant.

**OPINION AND ORDER**

21-CV-08275 (PMH)

Sherise Richardson ("Plaintiff") brings this putative class action against Edgewell Personal Care, LLC ("Edgewell" or "Defendant") alleging that Defendant's representation that its sunscreen products are "Reef Friendly*" is false and misleading because the products contain chemicals that are harmful to coral reefs. (Doc. 23, "FAC"). Plaintiff asserts claims for: (i) violation of N.Y. Gen. Bus. Law ("GBL") §§ 349, 350; and (ii) breach of express warranty.[1] (*Id.*)

Presently pending before the Court is Defendant's motion to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendant moved on June 7, 2022, in accordance with the briefing schedule set by the Court, to dismiss the FAC. (Doc. 30). Defendant filed a memorandum of law in support of its motion (Doc. 31, "Def. Br."), Plaintiff filed a memorandum of law in opposition (Doc. 32, "Pl. Br."), and the motion was fully submitted upon the filing of Defendant's reply brief in further support of its motion (Doc. 33, "Reply"). Plaintiff subsequently submitted a notice of supplemental authority on August 10, 2022, bringing the case *Moran v. Edgewell Personal Care, LLC*, No. 21-CV-07669, 2022 WL 3046906 (N.D. Cal. Aug. 2, 2022) to the Court's attention. (Doc. 34).

---

[1] Plaintiff initially asserted a claim for breach of the implied warranty of merchantability but subsequently withdrew that claim in her pre-motion conference letter. (Doc. 25 at 3, n.2).

For the reasons set forth below, Defendant's motion is GRANTED and the FAC is dismissed with prejudice.

## BACKGROUND

Defendant manufactures, markets, and sells a range of sunscreen products under the Hawaiian Tropic® brand. (FAC ¶ 10). Plaintiff's claims are based on the representation "Reef Friendly*" featured on certain Hawaiian Tropic® sunscreen labels. (*Id.* ¶ 2).[2]

I.    The Accused Label

The front label of the Purchased Product describes the product as "Reef Friendly*" (*Id.*, Ex. 1-19). The asterisk appended to the "Reef Friendly" representation directs consumers to the top of the back label, which contains the clarifying statement: "*No Oxybenzone or Octinoxate." (*Id.*). The FAC included images of the front and back labels of the Purchased Product:

---

[2] While Plaintiff alleges that she only purchased Hawaiian Tropic® Silk Hydration Weightless SPF 30, the FAC asserts claims as to 20 different Hawaiian Tropic® sunscreen products (the "Products"). (FAC ¶ 4). The front label of each of the Products contain the representation "Reef Friendly*" but the back labels of the Products are not uniform. (FAC, Ex. 1.) Certain of the Products have the explanatory comment "*No Oxybenzone or Octinoxate" on the back label while others read "*Hawaii Compliant: No Oxybenzone or Octinoxate." (*Id.*) The Court discusses Plaintiff's standing to assert claims with respect to unpurchased products *infra*.




(*Id.*, Ex. 1-15 (Silk Hydration Sunscreen Oil Mist SPF 30, 5-oz)).

II.     Plaintiff's Purchase

Plaintiff alleges that she purchased Hawaiian Tropic® Silk Hydration Weightless SPF 30 (the "Purchased Product") for $8.92 at a Walmart in Middletown, NY in July 2021. (*Id.* ¶ 9). Plaintiff read the representation "Reef Friendly*" on the Purchased Product and "believe[d] that the Product's ingredients were all reef-friendly and otherwise could not harm reefs." (*Id.*) However, despite reading the phrase "Reef Friendly*" on the Purchased Product's label, Plaintiff alleges that she "did not see and was not aware" of the asterisk that immediately follows the representation and did not read any information on the back label. (*Id.*). Plaintiff alleges that

Defendant's "Reef Friendly*" representation is false and misleading because the Purchased Product contain ingredients that "can harm and/or kill reefs, including the coral reefs and the marine life that inhabit or depend on them." (*Id.* ¶ 3). Finally, Plaintiff alleges that she "would not have purchased" or would not have purchased "for as great a price" had she known that the "Reef Friendly" representation was false. (*Id.* ¶ 44).

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143). When, as here, "the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019).

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). "Furthermore, where 'the allegations of [a] [c]omplaint are materially inconsistent with the' evidence a plaintiff relies on to make those allegations, we may 'easily conclude that [p]laintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss.'" *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## <u>ANALYSIS</u>

I.   <u>Article III Standing</u>

The Court, as guided by precedent, turns first to Defendant's argument regarding the lack of subject-matter jurisdiction and dismissal mandated under Rule 12(b)(1). "Article III of the Constitution limits the judicial power of the United States to the resolution of cases and

5

controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (internal citation omitted). "Where a party lacks standing to bring a claim, the court lacks subject matter jurisdiction over such claim." *Zlotnick v. Equifax Info. Servs., LLC*, No. 21-CV-07089, 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022).To establish Article III standing, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 703 (2d Cir. 2020). Defendant argues that Plaintiff has not suffered an injury-in-fact because "she fails to allege that she used or intended to use any of the Hawaiian Tropic® sunscreen products . . . near any actual coral reefs." (Def. Br. at 12-13). The Court disagrees.

Plaintiff need not allege that she intended to use the sunscreen near a coral reef because "an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (collecting cases); *see also Axon*, 813 F. App'x at 703 (holding that a plaintiff suffers an injury-in-fact where she "purchased products bearing allegedly misleading labels and sustained financial injury – paying a premium – as a result"). Plaintiff alleges that she has standing to pursue her claims because she "spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims" (FAC ¶¶ 64, 73). Plaintiff further alleges that she "would not have purchased the Products, or would not have purchased the Products for as great a price" if she had known that the "Reef Friendly" representation was false. (*Id.* ¶ 44). Plaintiff therefore has adequately alleged an injury-in-fact for purposes of Article III standing.[3]

---

[3] Defendant also argues that Plaintiff lacks "statutory standing" under GBL §§ 349 and 350. (Def. Br. at 13-16). As the Second Circuit has advised, "what has been called 'statutory standing' in fact is not a

Plaintiff brings this putative class action against not just the Purchased Product, but against 20 different sunscreen products sold under the Hawaiian Tropic® brand, 19 of which Plaintiff does not allege ever purchasing. (FAC, Ex. 1). "Courts are split as to whether a plaintiff has Article III standing to bring a putative class action over products the plaintiff did not purchase herself or himself, with some courts finding the inquiry is best addressed at the certification stage." *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 188 (S.D.N.Y. 2016) (citing *Kacocha v. Nestle Purina Petcare Co.*, No. 15–CV–5489, 2016 WL 4367991, at *10 (S.D.N.Y. Aug. 12, 2016)). "The better view appears to be, as 'courts in this Circuit have held,' that, 'subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are sufficiently similar to the products that the named plaintiff did purchase.'" *Id.* (quoting *Mosely v. Vitalize Labs, LLC*, No. 13–CV–2470, 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015)). Here, all of the 20 sunscreen products cited in the FAC include the representation "Reef Friendly*" on the front label. (FAC, Ex. 1). Some of those products have the clarifying statement "*No Oxybenzone or Octinoxate" on the back label while others read "*Hawaii Compliant: No Oxybenzone or Octinoxate." (*Id.*). Further, Plaintiff alleges that the unpurchased products are "substantially similar to the Purchased Product." (FAC ¶ 45.)

---

standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)) (further noting that "[b]ecause the Supreme Court made clear in *Lexmark* that the 'statutory' appellation is 'misleading' and 'a misnomer,' we avoid this appellation going forward"). Put simply, what Defendant calls "statutory standing" amounts to an argument that Plaintiff has failed to allege damages sufficient to state a claim under GBL §§ 349 and 350. *Harry v. Total Gas & Power N. Am., Inc.*, 244 F. Supp. 3d 402, 417 n.8 (S.D.N.Y. 2017), *aff'd as modified*, 889 F.3d 104 (2d Cir. 2018). Given this, the Court will consider Defendant's statutory standing argument under Rule 12(b)(6), together with Defendant's other arguments that Plaintiff has failed to state a claim for the violation of GBL §§ 349 and 350. *See Zanotti v. Invention Submission Corp.*, No. 18-CV-05893, 2020 WL 2857304, at *9 n.5 (S.D.N.Y. June 2, 2020) ("dismissal for lack of statutory standing is typically considered a dismissal for failure to state claim under Federal Rule of Civil Procedure 12(b)(6)").

Given that each of the unpurchased products is also a sunscreen carrying the "Reef Friendly*" representation, the unpurchased products are "sufficiently similar" to the Purchased Product. *Bautista*, 223 F. Supp. 3d at 188. Accordingly, the Court holds that Plaintiff has sufficiently plead standing as to the unpurchased products.

II.   New York General Business Law Sections 349 and 350

Plaintiff's first two claims for relief allege violations of GBL §§ 349 and 350. (Compl. ¶¶ 57-74). "Section 349 'prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *Shakespeare v. Compu-Link Corp.*, 848 F. App'x 474, 476 (2d Cir. 2021) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). Section 350 "prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Orlander*, 802 F.3d at 300 (cleaned up). "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562 (S.D.N.Y. 2021) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002)); *see also Housey v. Proctor & Gamble Co.*, No. 22-888, 2022 WL 17844403, at *1 (2d Cir. Dec. 22, 2022) ("Section 350 of the GBL prohibits false advertising in the conduct of any business, trade or commerce, and is analyzed under the same reasonable consumer standard as Section 349").

"To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander*, 802 F.3d at 300 (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)). "[T]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the

circumstances.'" *Id.* "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). To satisfy the reasonable consumer standard at the pleading stage, "plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers. Instead, Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (cleaned up). Defendant raises two arguments relevant to Plaintiff's GBL claims: (i) Plaintiff has not suffered an injury; and (ii) the "Reef Friendly*" representation is not materially misleading. The Court will address these arguments *seriatim*.

A.    Injury

"Although the Court has concluded that Plaintiff adequately pleaded an injury-in-fact for purposes of Article III standing, whether Plaintiff has properly alleged an injury for his N.Y. G.B.L. §§ 349 and 350 claims requires a separate inquiry." *Colpitts*, 527 F. Supp. 3d at 576. To plead an injury pursuant to either §§ 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302. "In the consumer goods context, an allegation of a defendant's deception alone does not suffice to plead injury, because a plaintiff may have received the benefit of the bargain despite the alleged misrepresentation." *Colpitts*, 527 F. Supp 3d at 576. Instead, a plaintiff "must plead something more than the defendant's deception; for example, that 'the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health.'" *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676-77 (S.D.N.Y. 2012).

An injury under §§ 349 and 350 therefore may be alleged under a price premium theory whereby a plaintiff claims to have paid more for the product than he or she would have if the defendant did not engage in allegedly deceptive practices. *See e.g., Orlander*, 802 F.3d at 302; *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350-51 (S.D.N.Y. 2020). A price premium theory requires a plaintiff to "allege that a company marketed a product as having a unique quality, that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." *Duran*, 450 F. Supp. 3d at 350 (cleaned up).

Plaintiff alleges that Defendant "greenwash[es]" its sunscreen products by marketing them using "environmentally and eco-friendly claims," such as "Reef Friendly" in order "to charge consumers a premium" and "gain an unfair advantage over their competitors." (FAC ¶ 37). This allegation sufficiently alleges a price premium theory. Plaintiff need not, as Defendant suggests, offer "underlying facts in support" of their theory of injury at the pleading stage. (Def. Br. at 16). All that is required to allege injury under GBL §§ 349 and 350 is that the Plaintiff "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)). Plaintiff's allegations here are distinguishable from those at issue in *Zottola v. Eisai Inc.*, where this Court held that plaintiff failed to allege a cognizable injury under GBL §§ 349 and 350 because, "[c]rucially, [p]laintiff does not allege that [d]efendants' alleged misrepresentation affected the [m]edications' price." *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 310-11 (S.D.N.Y. 2021). Here, in contrast, Plaintiff specifically alleges that consumers desire "eco-friendly" products and that Defendant labels their products "with environmentally and eco-friendly claims"

in order "to charge consumers a premium for reef-friendly products." (FAC ¶ 37). Unlike in *Zottola*, the FAC in the instant case does allege that Defendant's "Reef Friendly*" representation affected the accused product's price. Accordingly, Plaintiff has sufficiently pled an injury in connection with her claims alleging violations of GBL §§ 349 and 350.

      **B.**   <u>Materially Misleading</u>

"[I]n determining whether a reasonable consumer would have been misled by a [product label], context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (per curiam). "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id.* Courts must therefore "consider the challenged [label] as a whole, including disclaimers and qualifying language." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018); *see also Hoffmann v. Kashi Sales, L.L.C.*, No. 21-CV-09642, 2022 WL 17823171, at *3 (S.D.N.Y. Dec. 20, 2022) ("courts assess each allegedly misleading statement in light of its context on the product label or advertisement as a whole, contemplating the entire mosaic rather than each tile separately"). "If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim." *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-CV-02250, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019); *see also Melendez v. ONE Brands, LLC*, No. 18-CV-06650, 2020 WL 1283793, at *7 (E.D.N.Y. Mar. 16, 2020) (dismissing false advertising claims alleging GBL §§ 349 and 350 violations where "any potential ambiguity created by the front label regarding the bars' carbohydrate and caloric contents is readily clarified by the back panel of the bars' packaging.").

Plaintiff argues that whether a reasonable consumer would "[n]otice the asterisk" on the front label and whether a reasonable consumer would "[f]ind and read the statement "*Hawaiian Compliant: No Oxybenzone or Octinoxate" or "*No Oxybenzone or Octinoxate" on the back label are issues of fact which should be resolved by the trier of fact. (Pl. Br. at 3). The Court disagrees. "It is unreasonable—as Plaintiff attempts—to suggest that a consumer is not required to read a product's label to obtain information." *Gordon v. Target Corp.*, 20-CV-9589, 2022 WL836773, *10 (S.D.N.Y. Mar. 18, 2022) (granting a motion to dismiss claims for violations of GBL §§ 349 and 350 based on misrepresentations as to the accused product's added sugar). The asterisk appended to the "Reef Friendly" representation is plainly visible on the front of the label and would lead a reasonable consumer "to another statement" carrying a corresponding asterisk elsewhere on the label. *Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at *1 (S.D.N.Y. Mar. 21, 2022) (dismissing GBL §§ 349 and 350 claims where the alleged misleading statement was "accompanied by an asterisk leading to another statement").

The Court finds that the "Reef Friendly*" representation is not misleading but is instead ambiguous because it "is susceptible to multiple interpretations." *Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 311 (S.D.N.Y. 2022). The representation "Reef Friendly*" does not unambiguously convey that the sunscreen products do not convey *any* ingredients that could be harmful to coral reefs. Separately, the term is equally susceptible to the interpretation that the Defendant's sunscreen products do not contain certain ingredients harmful to coral reefs commonly found in competing sunscreen products. The asterisk appended to the representation, however, asks consumers to read the rest of the label for further clarification. Indeed, located at the very top of the back label is the clarifying language "*No Oxybenzone or Octinoxate." (FAC Ex. 1-19). The FAC acknowledges that Oxybenzone and Octinoxate have a "deleterious impact

on coral reefs." (*Id.* ¶ 28). A reasonable consumer would read the phrases "Reef Friendly\*" and "\*No Oxybenzone or Octinoxate" to mean that the Products are reef friendly because they do not contain any Oxybenzone or Octinoxate. Likewise, a reasonable consumer would read the phrases "Reef Friendly\*" and "\*Hawaii Compliant: No Oxybenzone or Octinoxate" to mean that those sunscreen products are reef friendly because they do not contain Oxybenzone or Octinoxate in compliance with Hawaiian state law. *See* Haw. Rev. Stat. § 342D-21 (prohibiting the sale of "any sunscreen that contains oxybenzone or octinoxate.").[4] Accordingly, considering the Purchased Product's label as a whole, the Court finds that the "Reef Friendly\*" representation is not materially misleading and grants Defendant's motion to dismiss Plaintiff's claims alleging violations of GBL §§ 349 and 350. *See Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at \*1 (S.D.N.Y. Mar. 21, 2022) (dismissing GBL §§ 349 and 350 claims where the alleged misleading statement was "accompanied by an asterisk leading to another statement" that clarified it, reasoning "[t]he Court fails to understand how a reasonable consumer could interpret those statements to mean [what Plaintiff alleged].").

III.   <u>Breach of Express Warranty</u>

Defendant argues that Plaintiff has failed to state a claim for breach of express warranty for two reasons: (i) Plaintiff did not provide timely pre-suit notice as required by N.Y. U.C.C. § 2-607(3)(a); and (ii) the Purchased Product does not make an express warranty that it only includes ingredients that do not cause harm to coral reefs.

---

[4] The FAC refers to the Hawaii state law as Plaintiff alleges that "state lawmakers banned oxybenzone and octinoxate from being included as ingredients in sunscreens sold in Hawaii because of their deleterious impact on coral reefs and dependent marine life." (FAC ¶ 28). Further, "[t]he Court may take judicial notice of state statutes." *Barkai v. Mendez*, No. 21-CV-4050, 2022 WL 4357923, at \*13 (S.D.N.Y. Sept. 20, 2022) (citation omitted). Accordingly, the Court considers the Hawaii state law either under the doctrine of incorporation by reference, or alternatively, properly subject to judicial notice. *See DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir.2010) (incorporation by reference); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991) (judicial notice).

With regards to the pre-suit notice requirement, Plaintiff alleges that "on or about October 4, 2021"—3 days before Plaintiff commenced this action—Plaintiff's counsel sent a letter which notified Defendant that it was in violation of N.Y. U.C.C. § 2-607 and New York state consumer protection laws. (FAC ¶ 80). Defendant argues that notice was untimely because it did not receive Plaintiff's pre-suit notice letter until October 12, 2021. (Def. Br. at 18). "[R]easonableness of delay is normally a question of fact for a jury," however courts have dismissed breach of express warranty claims where the delays were found to be "unreasonable as a matter of law." *Tomasino v. Estee Lauder Companies, Inc.*, No. 13-CV-04692, 2015 WL 4715017, at *5 (E.D.N.Y. Aug. 7, 2015) (dismissing an express warranty claim where plaintiff waited 30 months after she had purchased the accused product to send pre-suit notice). N.Y. U.C.C. § 2-607(3)(a) only requires that the buyer provide notice "within a reasonable time after [s]he discovers or should have discovered any breach." N.Y. U.C.C. § 2-607(3)(a). Here, Plaintiff alleges that she bought the accused product "in July 2021" (FAC ¶ 9) and sent pre-suit notice "on or about October 4, 2021" (*id.* ¶ 80). A 3-month delay is not so untimely that the Court can find it unreasonable as a matter of law. *Tomasino*, No. 13-CV-04692, 2015 WL 4715017, at *5.

The Court turns finally to Defendant's argument that the Products do not make an express warranty that they only contain ingredients that do not cause harm to coral reefs. An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. § 2-313(1)(a). "New York breach of express warranty claims require (i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020) (cleaned up). Plaintiff alleges, in support

of her breach of express warranty claim, that Defendant created an express warranty that the Products conformed to the "Reef Friendly*" representation and breached that warranty because "the Products do not conform to" the "Reef Friendly*" representation. (FAC ¶¶ 77, 79). These allegations fail as a matter of law to state a claim for breach of express warranty. The phrase "Reef Friendly*"—standing alone—is not a material statement amounting to a warranty because "[g]eneralized statements by a defendant do not support an express warranty claim." *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021). The phrase "Reef Friendly*" without anything more, is far too vague to create an affirmation of fact or promise required for an express warranty. On the other hand, the statement "Reef Friendly*" as clarified by the "*No Oxybenzone or Octinoxate" or "*Hawaii Complaint: No Oxybenzone or Octinoxate" language on the back label, creates a warranty that the Products do not contain any Oxybenzone or Octinoxate. Plaintiff does not allege that the Products contain any Oxybenzone or Octinoxate, and as such, Plaintiff fails to allege that Defendant breached an express warranty.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's claim for breach of express warranty.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's First Amended Complaint with prejudice.[5]

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 30, and to close this case.

---

[5] Given the conclusions reached herein, the Court need not and does not reach Defendant's argument that Plaintiff's claims are barred by the doctrine of primary jurisdiction. (Def. Br. at 20-25).

**SO ORDERED:**

Dated:   White Plains, New York
          January 30, 2023

_____

PHILIP M. HALPERN
United States District Judge